May it please the Court, my name is Kevin Quisenberry, and I represent the appellants in this case. The Rule 23b2 class that the District Court certified. With the Court's permission, I'd like to reserve three minutes for rebuttal. Your Honors, the appellants respectfully submit that this Court must compel HUD to take two discrete actions that it was legally required to take when it disposed of their property for demolition and redevelopment. The first is HUD was required to preserve the HAP contract, the Project Based Section 8 contract, at this site as a term of the disposition. The reason why is because the property was not infeasible as HUD determined. Now this is important in this case because the plaintiff class, the co-op members who enjoyed the Project Based Section 8 while they lived there, were all displaced and vouchered out of the property. Do the very low scores on these inspections affect the feasibility determination? In other words, it was over a period of about two years, the scores were 53, 55, and 43 consecutively on a scale of 100. So you get the impression that there were a lot of problems on this property. That's all that you get is an impression. Diana Gray, the HUD Multifamily Director for Pittsburgh, testified in a deposition. The week between we obtained the TRO and the court dissolved it. That a score of 60 or below is an indication there may be issues. But it's not a determination that there are issues and the property has failed. Then they send out an inspection team to go look at the property on a more substantial basis to determine really what the qualities are there. In this case, the feasibility question is important for both issues. As I mentioned, the first issue is HUD was required to preserve this HAP contract as part of this disposition. If it was feasible to do so? That's right. And the second issue is, what caused the permanent displacement? Was it health and safety conditions of the property or was it HUD's decision to demolish the property and choose not to make repairs that it found to be feasible? But you say that the inspections themselves in a period of two years were not sufficient to satisfy the feasibility criteria? No, Your Honor. Under Section 311, the feasibility criteria comes from HUD's May 31, 2006 memorandum that set forth the criteria by which it would analyze this Section 311 question. The feasibility standard in that memo is the same feasibility standard HUD always uses. It's whether HAP contract rents, you look at all the rent coming into the property, whether HAP contract rents are enough to pay for the debt service you need to repair the property and the ongoing expenses. Any evidence in the record that they were enough, in fact? In fact, yes, Your Honor. HUD performed the analysis as dictated by its memo. It had a comprehensive repair survey and a peer analysis done at this property. The comprehensive repair survey looks at the cost of repairs. The peer analysis looks at the operating expenses. And the conclusion of both of those analyses was, is the property feasible? And literally, the answer is yes, viable. In fact, the analysis found that the property would have enough money from the Section 8 contract rents and tenant rents to have a positive cash flow of over $300,000 a year. They did say that the cost of repair was about twice the amount of the mortgage. It's irrelevant, Your Honor. There's only one standard. HUD created it. It had the authority to create it, but it can't deviate from that. Speaking of HUD standards, isn't it uncontested by you that HUD had the right to abate rent payments based upon the four scores and the 21-day letter and other problems that HUD was identifying? Well, Your Honor, the Section 8 contract permits HUD to abate subsidies as a remedy of a breach. The Section 8 contract is pretty clear that it's a unit-by-unit determination. And in fact, when you read HUD's Multifamily Disposition Handbook, which I quoted in the into decent, safe, and sanitary condition, the abatement must be removed from that unit. Let me try to ask my question again. Is it uncontested that HUD had the right to abate rental payments on these units at the project it issued? It's uncontested that to the extent units were found not decent, safe, and sanitary, then yes, the contract permits HUD to do so. So once we have an abatement, and as I recall, correct me, I may be off a little bit, but I think it was about two years where the payments were abated. Is that right? Approximately two years? It was from November 10, 2004, until October 26, 2006. Okay. So almost two years the payments were abated, then what is there to continue? How do you get around the language that seems to require a continuation of payments if in fact there's nothing to continue? Your Honor, I want you to hear me clearly, because this case is important. It's important for these class members, and it's important because HUD is in the business of disposing of multifamily property every day of the year, to the tune of 100,000 or 150,000 units per year. It's important this court get... I'm sorry, did you say HUD is in the business of disposing hundreds of units per year? Hundreds of thousands of units. Why is that? Well, Your Honor, because sometimes the owners don't make the mortgage payments. Sometimes the properties are in poor condition. Oh, you say it's in the business of doing it. I got the impression like they were making money by doing it. No, it's a figure of speech, Your Honor. Let me slow down. I just want to address your question, Judge Hartman, but I want you to listen to the answer. And you're going to talk about the distinction between abatement and feasibility, which is a problem that I have. Yeah, the only relevant question here is was the property feasible for continued assistance into the future? Congress was very clear. Well, I know that's your position, but I'm challenging you on that because I'm not sure that that's correct. Your Honor... What I'm asking you is, as I read the language, there needs to be a continuation of payments, but if the payments are abated and for two years no payments are made, it would seem logical to conclude that there's nothing to continue. Well, that's... We don't even get to the feasibility analysis, if that's the case.     I'm going to explain it to you. I'm going to explain it to you. I'm going to explain it to you. I'm going to explain it to you. I'm going to explain it to you why. Congress spoke very clearly on what it intended. When it passed this legislation in the congressional record, it stated its, quote, purpose was to allow disabled and non-disabled tenants to keep their Section 8 contracts on their property after foreclosure. Not to maintain payments to owners before or after foreclosure. The purpose is, if there's a contract, while HUD is in the process of disposing of the contract, after disclosure, after disposition, I mean, unless it's not feasible. Now, HUD understood this. Your Honor, if you read the May 31, 2006 memo, which is quoted throughout my briefs, HUD stated, in accordance with Section 311, the Secretary is required to maintain the project-based Section 8 contract, not payments to owners or anything else, when the Secretary is in the process of disposition. So your argument is that they have to maintain the contract. They don't have to maintain the payments? That's right. But doesn't the statute use the word payments? Well, Your Honor, the statute says they have to maintain payments that are attached to units. And if there are no payments ongoing, there's nothing to maintain? You may not be familiar with the different Section 8 programs and HUD subsidy programs because you may not have worked in this area. The statute says they have to maintain payments connected to units under Section 8. Section 8 only has two forms of subsidy. One is payments that are attached to units, and one is payments that are attached to people. That's called vouchers. Project-based versus contract. That's right. And that's why Congress... I understand that distinction. But... When the language of the statute... If there's no payment being made on the unit for two years, what is there to maintain? How can you maintain something that's not occurring? You maintain the contract. Because of a prior default. Your Honor, there's always a prior default in these situations. You know, HUD would have you believe, and the district court bought into this, that Congress could not have meant for HUD to pay owners who defaulted. That's bad policy. This law has nothing... I thought the district court meant Congress to say what it said in the statute, which is there need to be payments. And if there are no payments, there's nothing to maintain. Your Honor, respectfully, I think that's a misreading of the statute. Congress stated its purpose explicitly, which was to maintain Section 8 contracts. HUD understood this. HUD understood its duty was to maintain Section 8 contracts. It's irrelevant whether payments are suspended or not. The question is, Your Honor, whether it's feasible to preserve that contract or not. I want to ask you a question on that same point. I think I understand your argument, which is that abatement of HAP payments is related to the repairs. In other words, they abate payments until repairs are made. That's right. But it has nothing to do with whether it's feasible to maintain the contract. That's exactly right, Your Honor. Which is the requirement to suspend or not suspend the contract. Well, no, a requirement to preserve or not preserve the contract. Preserve or not preserve. Following disposition. So abatement has nothing to do with whether the contract continues or not. It has nothing to do with whether it's feasible to preserve that contract after foreclosure. Your Honor, I briefly want to address the relocation issue. HUD says it's health and safety reasons. The fact is, under the law, HUD has absolutely no discretion to permanently displace residents for health and safety reasons. Its own regulations at 24 CFR 290.7c say that when there's an exigent health and safety issue, HUD's authority is that they may require people to move and that they must provide temporary relocation. Regulations also say that HUD has a duty to preserve the property. In other words, make the repairs that they find to be required. Some relocation assistance was provided. That's right, but not Uniform Relocation Act level assistance. It's a higher amount. It's a much higher amount. It's a lot more services and dollar amounts. In this case, people were displaced with vouchers. They were given a list of all available apartments in the city and told good luck. The mobility counseling that people require to be able to get into neighborhoods with better schools, that preserve the proximity to their jobs, that preserve the proximity to their doctors. When is HUD required to pay the higher amount and when is the lower amount appropriate? It's really very simple. When permanent displacement results from the sale, rehabilitation, or demolition of the property by a third party and when HUD provides funding for that, connected to that. That's the only question. HUD had no authority to permanently displace for health and safety reasons. In fact, they had a duty to make those repairs unless they made a non-preservation determination, which is exactly what they did under 24 CFR 290.25. They determined they were going to facilitate the redevelopment of this property as they had been in discussions for years with the Urban Redevelopment Authority of Pittsburgh and the developers who acquired the surrounding properties. The big picture of this case is there were five subsidized multifamily developments, all of which... Was there discussions for foreclosure at the time that the Section 8 contract was in place? Absolutely. Your Honor, you should read the affidavit of Jason Roth that I referred to. I have read it. Yeah. The district court acted like it did not exist. You know, he explained that he attended weekly meetings with HUD, the Urban Redevelopment Authority, the three developers who acquired the property surrounding this property, and representatives from Walmart who were going to build the mall on top of the hill. Every week they got together and talked about how they were going to draft a plan to shape the redevelopment of this neighborhood. And for 30 steals, the conclusion was it had to be foreclosed because they had to have a new owner, they had to get rid of the use restrictions on the property, they had to extinguish the debt, and they had to do those things in order to demolish it and redevelop it as something different than what it was. Okay. Thank you very much. Thank you. Mr. Everhart? Good morning. I please the court, Robert Everhart, Assistant U.S. Attorney, on behalf of the Appalese. The district court very thoroughly and, I suggest, very convincingly analyzed the arguments made by the plaintiff in the court below, and certainly we rely heavily upon the district court's opinion in this case. I would like to, with the permission of the court, discuss the second issue that was raised in our briefs regarding the appealability issue. This case was filed with a notice of appeal that only indicated the appellant to be Gene Massey. Did the notice say, and others, or is that? No. Subsequent to filing that notice of appeal approximately six weeks later, a second notice of appeal, which was called an amended notice of appeal, was filed. The long and short of it is the clerk's office noticed that and asked the parties to address the proper parties before this court as a result of these two separate notices of appeal. Was there a district court determination or certification of the class in this case? There was, yes. Interestingly, also, there's some changes in the class during the litigation in the lower court. In fact, the lead plaintiff changed, as did several other plaintiffs who dropped out. But your argument is that the notice of appeal did not specify that the class was appealing. That's correct, and it's very consistent with decisions from the Seventh Circuit. In fact, there's a recent decision from the D.C. Court of Appeals that examines the very rule. How about the amended notice of appeal? Did that reference the class? Our position is that this notice of appeal only was a notice of appeal by Gene Massey. There's no indication, other than the caption, there is no indication that anyone other than Gene Massey filed a notice of appeal in a timely fashion to this court. But Rule 3C.3 states in a class document whether or not the class has been certified. The notice of appeal is sufficient if it names one person qualified to bring the appeal as representative. Isn't Gene Massey one person who is qualified to bring that appeal? It doesn't name that person in a representative capacity. She is a representative of that class, is she not? She is an individual tenant and a member of the co-op. She became the lead plaintiff in the district court. But the Seventh Circuit case, which was pointed out in the clerk's order, is a case which reflected on this almost the same kind of a situation, where there was a failure in the body of the notice of appeal to in any way indicate that the appeal was being taken by anyone other than the individual. I thought that the notice of appeal contained an at all in the notice of appeal. It did not. That's the amended notice of appeal. What was denied, right? The amendment was denied. Well, essentially, counsel conceded that that notice of appeal was out of time. But the original notice of appeal referred to the case below as Gene Massey at all. In the caption? Yes. Well, the caption on the notice of appeal says at all. Yes. And I would suggest that indicating at all is not an indication of who was filed. And the caption is not an indication of who the appellant is before the court. And that is exactly what the Seventh Circuit said. The Fifth Circuit has said, and recently the D.C. Court of Appeals has said, with regard to naming an individual as a representative in the body of the notice of appeal. That's basically our position, Your Honor. May I ask you a question? I have no other questions on that. Which has to do with the feasibility issue that we had discussed before. I'm looking at Joint Exhibit 322, which is a report prepared by HUD. And in the column, item number 26, I should say. Item number 26 says net operating income $343,000. I'm sure you're familiar with this exhibit and that figure. Which suggests to me that there is a net income coming into Three Hills East project, rather than a loss, which is what HUD's position is. We're losing money, is what HUD says. Apparently they're not. HUD's position with regard to feasibility, Your Honor, is that this all goes back to the plaintiff's reliance upon Section 311 as the basis for this argument that HUD was supposed to maintain this project-based HAP contract. But they have to show infeasibility in order to cancel the contract. If the contract is still there, they have to provide HAP assistance. Well, Section 311 provides, in two different sentences, interesting words that have to be defined. One of them is attached, which the district court dealt with and said, because of the abatement, this contract was no longer attached to this project. Contracts were no longer attached or the payments were no longer attached? The payments no longer being attached. The contract, in essence, was no longer in effect. The contract wasn't canceled or terminated. The contract seems to be just sitting there, not really accomplishing much, since the payments that would have been made pursuant to the HAP contract were abated. Right. Is there a more accurate way to characterize it? Well, more accurately characterized that there still was out there the ability on the part of the owner to cure the deficiencies that up until the time of foreclosure. That doesn't cancel the contract. Well, it cancels the Section 8 supplements that would be made. Supplements or payments? The payments that were beyond the 30% that were being paid by the tenants. I don't know if the tenants were continuing to pay the 30%. Those records were being kept by the owner of the co-op. And, in fact, one of the determinations made was that rents were not being collected. There was a failure, a management failure, in addition to all of these deficiencies that were found in the property itself. The reason for going into foreclosure, one of the reasons given was because the cost of repairs was more than double the rental income, I believe. Right. Or the cost of repair. And, in addition, the value of the property. The cost of repair was more than double the mortgage? The mortgage. Right. However, the report that I referenced before has a box here where it says project viability after repairs. This is referenced by the plaintiff in this case, so you're aware. Yes. And it says financially viable question. The answer, yes. The project was financially viable. So I don't understand how, then, you can get into foreclosure and justify it by saying that the repairs are twice the amount of the mortgage when your own report says the project is financially viable. First of all, the feasibility was only a discretionary aspect of this. It was not necessary that there be a feasibility determination. The feasibility determination actually occurred well after the abatement had taken place. The timeline in this case makes it very clear that the property was deteriorating. Abatement seems to have nothing to do with feasibility. Abatement is just I'm going to hold your rent until these repairs are made. That has nothing to do with the underlying contract. I'm saying that the abatement decision was based upon the November 10th, 04 determination of abatement was based upon the existing property condition. After that property condition was taken into consideration with regard to other management and oversight problems, it was determined that foreclosure was appropriate. 311 has another condition imposed on HUD before it can cancel the contract. It has to consult. That's true. And I didn't notice very much consulting. Maybe you can tell me how HUD consulted with respect to the contract. I think that the record reflects consultation. But beyond that, I would like to step back one point. I'll come back to that. Section 311 only applies to fiscal year 06. The foreclosure occurred in fiscal 07. So, first of all, the argument that is made in our brief and wasn't specifically addressed by the district court, and I would suggest the court went off on the other aspects of the case. But Section 311, in our view, doesn't apply at all because it's only applicable to 06 property disposition issues with regard to project. But what if the contract was still in place during that period? In other words, the HUD contract was not terminated. Well, it was, but it was foreclosed in fiscal year 07. So, Section 311 application is limited. Is your position that this contract was terminated? Our position is that the contract was not subject to Section 311's statement from Congress with regard to either the feasibility suggestion, which the other aspect of Section 311 is that the second sentence in Section 311 is discretionary. The feasibility requirement is not a requirement, a mandatory requirement. It's a suggestion from Congress that's part of Section 311. I don't follow that because it's right in the statute. How does it turn from a requirement into a suggestion? The very language of Section 311 in which Congress used the words, the Secretary may, in consultation with tenants, contract for project-based rental assistance payments with an owner or owners of other existing housing properties or provide other rental assistance. I think that the second sentence of Section 311 is a discretionary statement to the Secretary that has to be read in the context of the entire Section 311 provision. You do not find in that sentence a mandate that there be a feasibility determination, and even if there was a reading of Section 311, it's only applicable to fiscal year 2006 project-based disposition efforts. I would also point out – Well, hold on a second. I think I'm looking at 311, and I see the second sentence of the statute says, to the extent that the Secretary determines that it is not feasible to continue such assistance based on cost, et cetera, et cetera, et cetera. I don't see a may or possible or any other qualified language in that sentence. To the extent the Secretary determines that it is not feasible to continue such assistance. Yeah, the sentence goes on. You want me to go on? It goes on to suggest that the Secretary may, in consultation, go and do other things. May provide project-based section. I don't see that qualifying the preceding sentence at all. That gives the Secretary an out. If the Secretary makes a feasibility determination, then the Secretary is relieved of the obligation that comes prior that it continue payments. I mean, the first – I think we're making this – with all due respect, we're making this more complicated than it might be. The first part of 311 says you have to continue the payments, and then it says if the Secretary makes a determination that it's not feasible, then you can move the folks somewhere else. Yes. Isn't that all it says? That's all it says. All right. And your argument, as I understand it, and the district court's holding is we don't get the feasibility because there are no payments to continue. That's correct. That the feasibility provision only kicks in if this is an ongoing project where the payments are ongoing and continuing. If there is – And if the payments are not continuing because the property is failing or otherwise uninhabitable or unsafe or unsanitary, then we don't even get into 311. Right. Is that your position? That's our position. I wanted to point out that this is also a fiscal 06. Well, but I think that's a red herring because 07, they passed the same provision, did they not? No, they didn't. I don't believe so. Not the same language. I thought – In fact, the language of this continuing resolution, this is part of a funding bill, and the language was inserted. The district court goes to some length to look into the legislative history when it does its Chevron analysis and finds that the secretary's interpretation was a reasonable one under Chevron analysis. What the district court reflects upon is the fact that Congress was suggesting to HUD, and that's my interpretation. I don't pretend to be a HUD expert. I'm not going to suggest that. But my reading of this as a non-expert is HUD was being told by Congress, try to maintain things in place, the funding is going to be available, and to the extent that you have other reasons to proceed in a normal manner, go ahead. And I think when the secretary was faced with a project-based Section 8 situation where the deterioration of this project was such that in October of 2002, the score was 53, below the 60 minimum. The next year it was 55, and the next year it was 43. And before the 43 was determined by a REACT inspection, in June of 2004 there was a site visit. There was a determination that there were significant and important management and oversight failures that suggested even beyond the condition of the property, the owner was not competently taking care of the management and oversight of this property. Your time is up, but I want to go back to Judge Fuente's question. I'm not sure I fully understood your answer with that. That statement contained in the one item of the record that it is viable. Go back to that second sentence, to the extent the secretary determines that it's not feasible. Where do you say the finding of not feasible is found in this record? My understanding of the finding is that the determination of the cost of repairs was $2,497,098. That amount was placed against the mortgage. It was twice the mortgage. And there was an added factor of the value of the property. So to look at the feasibility only in terms of what the net income might be was not sufficient, was not enough. But was there a finding, this is not feasible? I have a record site of 821A, which is the feasibility. It's called a sales analysis. And on 821A and 822A, there is an analysis that is conducted between those two pages. There's a third page, 823A, in which the report in and of itself doesn't make this determination of feasibility. It's the figures that were used from this report. You're extrapolating. Is that fair? Pardon? You're extrapolating. I'm extrapolating. There was a conclusion that it was not feasible, but there was never a HUD-specific finding that it was not feasible. I think the lack of feasibility is discussed in later documents. But I don't see a specific feasibility determination in one specific document. Was there an architectural study of the property that concluded that it was feasible to repair? Was there any such study? I'm not aware of the specific statement that it was feasible to repair. Well, the 822, or Exhibit 822, does say that the property is financially viable. In other words, it's worth maintaining. It's worth its value. And I think the presumption is that all rents would be collected, all management issues would be resolved. It's a conclusion that's not based on any speculative data. It's an absolute conclusion. It's fact, yes. Box number 26, net operating income, $343,000. That's not based on any maybe or possibility. Well, that doesn't take into account whether the other management and oversight problems would result in that amount not being collected. Thank you. Thank you very much. Thank you. Mr. Eberhardt, Mr. Quisenberry, I have three minutes. Your Honor, I would request, if we run a little bit long, if we could continue the discussion to the extent there are still questions like you did with If we have questions, certainly. Okay. Thank you. Your Honor, I want to make sure you understand what this feasibility analysis is in the administrative record that determined, is the project viable? And the answer is yes. It has a cash throwoff of $300,000 a year. What that is, HUD does a comprehensive repair survey. That's the architecture's job. You asked, is there an architectural study? The answer is yes. It's called a comprehensive repair survey. It goes through the property thoroughly and determines everything that needs to be rehabilitated in that property, really not just to bring it into decent, safe, and sanitary standards, but to make it feasible for preservation in the long term. And the comprehensive repair survey in this case talked about replacing all of the flooring in the units, all of the kitchens, the bathrooms, the roofs, the windows. Now, there's a cost that that study projects. It's going to cost this much dollars to do all of these things we want to do to this property. Now, the peer analysis looks at operating expenses. Reasonable management should cost this. Utilities should cost this. This sales analysis that comes to the conclusion that the property is viable, it puts those two costs together. It says based on the cost to repair all of these things in the comprehensive repair survey and based on the operating costs that the peer analysis comes up with, will the Section 8 contract provide enough cash flow to pay all of that? The cost to repair plus the cost to operate over the long term. And the answer was yes, it will pay all of the costs to repair everything, and it will pay all of the operating expenses for the long term, and in fact, throw a cash flow off of $300,000 a year. That's the conclusion. There's no way HUD can dispute that they found the property to be infeasible for preservation on that basis. You know, there's no evidence in the administrative record that HUD found any basis that this property was not feasible for continued Section 8 assistance into the future. Continued Section 8 assistance? Maintained, preserved, yes. What was there to continue when the payments were abated two years previously? Your Honor, I want to explain to you what abatement means. It's the thing that Justice Fuentes keeps talking about. Abatement only means that HUD says you defaulted, so I'm suspending payments to you, the owner. It doesn't mean that HUD has terminated the subsidy that's attached to the property by the contract. When the, listen to me. It didn't, it didn't, what did you just say? I'm sorry. I just, I'm sorry, Your Honor. I think I was anticipating your question. I am listening, and I'd like to ask a question if that's acceptable.  My question is, what payments were there to maintain? As I understood your argument when you were first up here, you indicated that HUD intended, or excuse me, Congress intended that the HAP contract was at issue. I went back and looked at Section 11. I don't see contract referenced anywhere. I see the phrase that the Secretary shall maintain any rental assistance payments. I agree with you that the HAP contract was never terminated. I can find no evidence that the HAP contract was terminated. But at the same time, the record seems to suggest that the rental assistance payments were not ongoing at the time of foreclosure. Is that correct, or tell me how that's incorrect? Your Honor, if that were what Section 311 meant, it would be meaningless. HUD abates every contract in every disposition. All right, let me just cut you off there for a minute. If your argument is that that's meaningless, then that's one thing. But before you get to the argument that it's meaningless or absurd, would you answer the question, is that correct or not, that the word contract doesn't appear? In fact, I found a prior iteration of the proposed legislation that said that they had to maintain the contract, and that language does not appear in the operative statute. Your Honor, the word contract appears in the congressional record when this legislation was introduced by Congress, the final version of this legislation. And Congress said our purpose is, quote, to allow disabled and non-disabled tenants to keep their Section 8 contracts on their properties post-foreclosure. In other words, so that they don't have to be displaced, so that they can remain in their communities, so that they can have a long-term and stable rental assistance available to them, not that it expires at the end of every year and a landlord can evict them at the end of every year, but that they can bank on when they raise their families and situate their lives. But if the property is in disrepair and it's unsafe and unsanitary, you're saying Congress wants them to stay in that location? Your Honor, this property is going to be developed into $100 million redeveloped rental and for purchase development. Absolutely, Congress would want tenants to have the opportunity to benefit from that. There is massive investment that is being put into their community, and they have been excluded from their community. And that's what Congress targeted with this Section 311, and that's why the relocation regulations are so stringent and require so much assistance, because if permanent displacement away from the property is actually necessary, people need a lot of help to try to rebuild what it is they've built over the last 20 or 30 years with their family and their community. Your Honor, you're getting hung up on this issue about payments attached. Look, payments are attached to a property by contract. That's the way they are attached. Or payments are abated by contract. But whether the payment is active or whether it's inactive, whether it's being made or whether it's suspended, the payment is still authorized and there and connected to the property by the contract. And HUD says after disposition, Congress says you must, HUD, maintain that contract unless this property is not feasible for ongoing assistance into the future. I understand your argument. Thank you. Your Honor, do you have any questions about the Class Rule 3.1c? I did not have an opportunity to address that. No, we have no questions. Do you have any? Okay. We have no questions. Thank you. Mr. Quisenberry, thank you very much for your very good arguments. And Mr. Eagleheart, thank you very much. We're going to take the case.